Matthew D. Mellen (Bar No. 233350)
MELLEN LAW FIRM
411 Borel Avenue, Suite 230
San Mateo, California 94402
Telephone:   (650) 638-0120
Facsimile:   (650) 638-0125
email@mellenlawfirm.com

Attorneys for Plaintiff
WAFAA ALMAHAMID-DICKEY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA — SAN FRANCISCO DIVISION

| | |
|---|---|
| WAFAA ALMAHAMID-DICKEY, an individual,<br><br>              Plaintiff,<br>         v.<br><br>U.S. BANK, N.A., a business entity; SPECIALIZED LOAN SERVICING, LLC, a business entity;  BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP, a business entity; and DOES 1-50, inclusive,<br><br>              Defendant. | Case No.: 3:16-cv-01274-LB<br><br>[*Honorable Laurel Beeler*]<br><br>**JOINT CASE MANAGEMENT CONFERENCE STATEMENT**<br><br>**Case Management Conference Hearing**<br>Date:   June 23, 2016<br>Time:   11:00 a.m.<br>Ctrm:   C– 15th Floor<br>Judge:  Hon. Laurel Beeler<br><br>Compl. Filed:  March 15, 2016 |

Pursuant to Civil Local Rule 16-9(a) and the Northern District Judges' Standing Order on Case Management Statements, this Court's Order Setting Initial Case Management Conference and ADR Deadlines, counsel for Plaintiff Wafaa Almahamid-Dickey ("Plaintiff"), and counsel for Defendants U.S. Bank, National Association ("U.S. Bank"), Specialized Loan Servicing ("SLS"), and Barrett, Daffin, Frappier, Treder, & Weiss, LLP ("BDFTW") (collectively, the "Parties"), submit this Joint Case Management Conference Statement.

## I. JURISDICTION AND SERVICE

This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a), since Plaintiff is a resident of California and Defendants are residents of other states. In addition, the amount in controversy exceeds $75,000.00 since the loan is in the amount of $316,000.00. Therefore, this Court has jurisdiction over this matter based on diversity of citizenship. Venue is proper in this court because the property at issue and a substantial part of the transactions at issue occurred in the City of Oakland, California, which sits in this district.

## II.  FACTS

**A.     Chronology of Facts**

    **1.     Plaintiffs' Response**

On or around February 18, 2015, Plaintiff WAFAA ALMAHAMID-DICKEY (hereinafter "Plaintiff") purchased the real property located at 891 57th Street, Oakland, California 94608 (hereinafter the "Property").  To secure the financing, Plaintiff executed a first-lien Deed of Trust and Promissory Note in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR RESIDENTIAL MORTGAGE CAPITAL. At all times alleged herein, Plaintiff has occupied the residence as her principal residence.

On or around January 29, 2009, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR RESIDENTIAL MORTGAGE CAPITAL assigned all beneficial interest under the Deed of Trust to Defendant U.S. BANK.

In 2013, Plaintiff experienced financial hardship due to the loss of employment and fell behind on her mortgage payments.

On or around February 26, 2015, Defendants U.S. BANK and BDFTW caused to be recorded a Notice of Default for Plaintiff's Property with the Alameda County Recorder's Office. Thereafter on or around October 21, 2015, Defendants U.S. BANK and BDFTW caused to be recorded a Notice of Trustee's Sale, with a sale date of November 12, 2015.

On or around October 24, 2015, Plaintiff submitted a loan modification application with the help of Ivan from Legal Aid Services to her then servicer America's Servicing Company (hereinafter "ASC").  Thereafter, the foreclosure sale for Plaintiff's property was postponed until December 17, 2015.

In the meantime, however, the servicing of Plaintiff's loan transferred to Defendant SLS informing her that the servicing of her mortgage loan has been transferred to Defendant SLS, effective December 1, 2015.  Therefore, Ivan, on Plaintiff's behalf, contacted Plaintiff's prior servicer, ASC, to follow up on the loan modification and was informed by ASC representative Elizabeth that all of the documents for the loan modification were transferred to Defendant SLS.

Therefore, on or around January 13, 2016, Ivan, on Plaintiff's behalf, contacted Defendant SLS regarding Plaintiff's loan modification application and was advised by SLS representative Jeff that it may take a few days for all of the documents to be uploaded to the system. Ivan explained that there was a trustee's sale for Plaintiff's Property scheduled for February 11, 2016 and Jeff advised to submit a new Request for Mortgage Assistance ("RMA") to Defendant SLS.

Therefore, pursuant to Defendant SLS's instructions, on January 14, 2016, Plaintiff submitted a RMA to Defendant SLS with a note reflecting the scheduled sale date of February 11, 2016. Defendant SLS, however, failed to provide a written acknowledgement confirming the receipt of the loan modification application. Therefore, Ivan, on Plaintiff's behalf, contacted Defendant SLS to follow up on the status of Plaintiff's loan modification application. Due to the proximity of the trustee's sale date, Defendant SLS advised Plaintiff to contact the trustee regarding the postponement of the sale date.

On or around February 3, 2016, Ivan, on Plaintiff's behalf, contacted Defendant BDFTW regarding a postponement of the trustee's sale date and was advised that the sale date would be postponed. On or around February 10, 2016, Ivan, on Plaintiff's behalf, contacted Defendant BDFTW to follow up on the new sale date and spoke with a BDFTW representative Michael. Michael informed Ivan that the trustee's sale for Plaintiff's Property was postponed.

Plaintiff relied on Defendant BDFTW's representations and continued to await a response on her loan modification application. As Defendants had postponed sale dates in the past, Plaintiff had no reason to doubt Defendants' assurances.

However, contrary to Defendants' representations, on February 11, 2016, Defendants sold Plaintiff's Property at a trustee's sale. At the time of the trustee's sale, Plaintiff was still awaiting a determination on her loan modification application. In fact, it was not until February 22, 2016, when a three-day notice to quit was posted on Plaintiff's door that Plaintiff discovered that her Property had been sold at a trustee's sale! Had Defendants not advised Plaintiff that the February 11, 2016 sale had been postponed, Plaintiff could have, and would have, pursued other foreclosure alternatives, including paying to reinstate her loan or filing a bankruptcy petition.

On or around February 22, 2016, Defendants caused to be recorded a Trustee's Deed Upon Sale for Plaintiff's Property with the Alameda County Recorder's Office. Having no other recourse, this lawsuit followed.

**2.     Defendants' Response**

Defendants Specialized Loan Servicing, LLP ("SLS"), US Bank, National Association, as trustee for the GSR Mortgage Loan Trust 2005-AR3 ("US Bank"), and BDFTW deny all of Plaintiff's allegations.

Plaintiff obtained a secured loan in the amount of $316,000 in February 2005.

Plaintiff fell behind on her mortgage in 2008. Her prior servicer offered her a loan modification in 2009, which she accepted.

Plaintiff defaulted on her modified loan in 2012. She never cured the default.

Throughout 2013 through 2015, Plaintiff repeatedly submitted incomplete applications for a second loan modification with her prior loan servicer.

The servicing of Plaintiff's loan transferred to SLS on December 1, 2015. At that time, her account was due for the June 2012 payment. She did not make a single payment to SLS.

SLS invited Plaintiff to apply for a loan modification. She did not submit any (partial or complete) loan modification application to SLS.

The subject property was sold at a duly noticed trustee's sale on February 11, 2016.

The subject property was not Plaintiff's primary residence, and Plaintiff held title jointly with her husband who is not a party to this lawsuit.

Defendants did not promise to postpone the trustee's sale and told Plaintiff by phone that the sale was scheduled to proceed on February 11, 2016 as publicly-noticed.

**B.     Procedural History**

Plaintiffs filed the Complaint on March 15, 2016. (Dckt. #1). On April 25, 2016 and April 28, 2016, respectively, Defendants filed Answers to the Complaint. (Dckt. # 10, 12). Trial has not yet been set in this matter

C.  **Principal Facts In Dispute**

    1.  **Plaintiffs' List of Principal Facts In Dispute**

Whether Plaintiff's prior servicer, ASC, transferred Plaintiff's October 2015 loan modification application to Defendant SLS when the servicing of Plaintiff's loan transferred.

Whether Defendant SLS ever made a determination on Plaintiff's October 24, 2015 loan modification application.

Whether on January 13, 2016, Defendant SLS's representative Jeff informed Plaintiff that she had to submit a new Request for Mortgage Assistance.

Whether Defendant SLS ever acknowledge receipt of Plaintiff's January 14, 2016 loan modification application submission.

Whether on February 10, 2016, Defendant BDFTW's representative advised Plaintiff's agent, Ivan, that the February 11, 2016 sale date had been postponed.

Whether Defendant SLS ever requested a postponement of the foreclosure sale for Plaintiff's Property.

The extent of U.S. Bank's control over the servicing of a mortgage loan of which it is the beneficiary.

The status of Plaintiff's loan modification review at the time of the foreclosure sale of Plaintiff's property.

Whether, if Defendant contends Plaintiff was not in loan modification review when the foreclosure sale occurred, Defendant ever sent Plaintiff a written denial of her loan modification application.

    2.  **Defendants' List of Principal Facts In Dispute**

Investigation is ongoing and discovery has not yet commenced.  Therefore, Defendants reserve the right to amend this statement.

## III.  LEGAL ISSUES

**1.     Plaintiffs' List of Principal Legal Issues**

Whether U.S. Bank can be held liable for its agent-servicer's violations of the Homeowner's Bill of Rights.

The extent that U.S. Bank can be held liable for its agent-servicer's and trustee's misrepresentations.

U.S. Bank's authority over its agents' actions.

Whether Defendants' actions were intentional or reckless, given Plaintiff's continuous reminder to Defendant's that a foreclosure sale was scheduled for her property while she was in loan modification review.

**2.     Defendants' List of Principal Legal Issues**

Whether the Homeowners' Bill of Rights applies to an investment property that is not the borrower's primary residence.

Whether a loan servicer is required to evaluate a borrower for multiple successive loan modification applications once she has already had a fair opportunity to be considered for a modification.

Whether Plaintiff submitted a "complete" loan modification application within reasonable timeframes specified by the mortgage servicer given the impending sale date.

Whether there was any material change in Plaintiff's financial circumstances since the date of her previous loan modification application, and whether any such change was documented by Plaintiff and submitted to the mortgage servicer.

Whether Defendants made any false statement of any past or present material fact without reasonable grounds for believing it was true and/or with the intent to deceive Plaintiff.

Whether Plaintiff reasonably and detrimentally relied on any allegedly false statement made by Defendants.

Investigation  is ongoing and discovery has not yet commenced.  Therefore, Defendants reserve the right to amend this statement.

## IV. MOTIONS

There are no pending motions. Defendants intend to move for summary judgment.

## V. AMENDMENT OF PLEADINGS

Plaintiff reserves the right to amend her pleadings if new claims are revealed during the course of discovery.

## VI. EVIDENCE PRESERVATION

The parties have taken all steps necessary to preserve evidence related to this action.

## VII. INITIAL DISCLOSURES

The parties have not yet exchanged initial disclosures and propose that initial disclosures be due thirty days after the June 23, 2016 Case Management Conference.

## VIII. DISCOVERY

**1.    Plaintiff's Response**

Discovery has not yet commenced.  Plaintiff anticipates that she will take depositions and serve written interrogatories, requests for admission, and requests for production of documents.

Plaintiff does not believe that any phases are necessary and does not foresee any changes in the limitations on discovery; however, should a need arise in the future, Plaintiff agrees to work together with Defendants in good faith to avoid any disputes over discovery limitations and to promptly submit to the Court any such disputes that cannot be so resolved

Plaintiff does not believe that any discovery phases are necessary and there is no need to alter the limitations on discovery.  However, should a need arise in the future, Plaintiff agrees to work together in good faith to avoid any disputes over discovery limitations and to promptly submit to the Court any such disputes that cannot be so resolved.

**2.    Defendants' Response**

Defendants anticipate that they will take depositions and serve written interrogatories, requests for admission, and requests for production of documents.  Defendants agree to work together with Plaintiff in good faith to avoid any disputes over discovery limitations and to promptly submit to the Court any such disputes that cannot be so resolved.

## IX.  CLASS ACTION

This case is not a class action.

## X.  RELATED CASES

The Parties are unaware of any cases that are related to this action.

## XI.  RELIEF

Plaintiff seek monetary damages, punitive damages, and disgorgement of sums improperly obtained.

## XII.  SETTLEMENT & ADR

The parties not engaged in any informal resolution discussions.  On May 26, 2016, the parties submitted a Stipulation and Proposed Order Selecting Mediation, which the Court adopted on May 31, 2016. (Dckt. # 17.)  The deadline to complete mediation is the presumptive deadline, or 90 days after the Order referring the case to mediation.

## XIII.  CONSENT TO MAGISTRATE

The parties have agreed to proceed before a Magistrate Judge. (Dckt. # 9, 11, 14).

## XIV.  OTHER REFERENCES

No other references are appropriate at this time.

## XV.  NARROWING OF ISSUES

The Parties anticipate that discovery and motion practice in this matter will narrow the issues before the Court.

## XVI.  EXPEDITED SCHEDULE

The Parties do not believe this matter is appropriate for an expedited trial procedure.

## XVII.  SCHEDULING

The Parties propose the following scheduling order:

| | |
|---|---|
| Initial Disclosures: | July 23, 2016 |
| Amendment Deadline: | August 31, 2016 |
| Fact Discovery: | January 30, 2017 |
| Expert Disclosures: | February 28, 2017 |

| | |
|---|---|
| Rebuttal Experts: | March 14, 2017 |
| Hearing on Dispositive Motions: | April 30, 2017 |
| Pre-Trial Conference: | May 31, 2017. |
| Trial: | June 19, 2017 |

## XVIII.  TRIAL

Plaintiffs request a 5-day jury trial.

## XIX.  DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

**A.   Plaintiffs' Response**

None.

**B.   Defendants' Response**

None.

## XX.  OTHER MATTERS

The Parties are unaware of any other matters that need to be addressed at the initial Case Management Conference.

Respectfully Submitted,

DATED:  June 8, 2016                MELLEN LAW FIRM


By:    */s/ Jessica Galletta*
             Jessica Galletta

Attorney for Plaintiff WAFAA ALMAHAMID-DICKEY


DATED:  June 8, 2016                BRYAN CAVE, LLP


By:    */s/ Sarah Burwick*
             Sarah Burwick

Attorney for Defendants SPECIALIZED LOAN SERVICING, LLC and U.S. BANK, N.A.


DATED:  June 8, 2016                BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP


By:    */s/ Edward Treder*
             Edward Treder

Attorney for Defendant BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP